IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

DOMINIQUE L. FREILINGER,

    Plaintiff,

vs.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

No. 20-CV-2001-LRR

**ORDER**

_____

*I.*     *INTRODUCTION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1
*II.*    *RELEVANT PROCEDURAL HISTORY.* . . . . . . . . . . . . . . . . . . . . 1
*III.*   *STANDARD OF REVIEW.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *A.*     *Review of Final Decision.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *B.*     *Review of Report and Recommendation.* . . . . . . . . . . . . . . . . . . . 3
*IV.*    *OBJECTIONS.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4
    *A.*     *Dr. Rahim's Opinions.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4
    *B.*     *Credibility Determination.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    *C.*     *RFC Assessment.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
*V.*     *CONCLUSION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## I. INTRODUCTION

The matter before the court is Plaintiff Dominique L. Freilinger's Objections (docket no. 19) to United States Magistrate Judge Mark A. Roberts's Report and Recommendation (docket no. 18), which recommends that the court affirm Defendant Commissioner of Social Security's ("Commissioner") final decision to deny disability benefits to Freilinger.

## II. RELEVANT PROCEDURAL HISTORY

On January 16, 2020, Freilinger filed a Complaint (docket no. 4), seeking judicial review of the Commissioner's final decision denying Freilinger's application for Title XVI

supplemental security income ("SSI") benefits. On April 1, 2020, the Commissioner filed an Answer (docket no. 8). On July 1, 2020, Freilinger filed the Plaintiff's Brief (docket no. 12). On July 30, 2020, the Commissioner filed the Defendant's Brief (docket no. 13). On August 13, 2020, the matter was referred to Judge Roberts for issuance of a report and recommendation. On February 4, 2021, Judge Roberts issued the Report and Recommendation. On February 18, 2021, Freilinger filed the Objections. The matter is fully submitted and ready for decision.

### III. STANDARD OF REVIEW

#### A. *Review of Final Decision*

The Commissioner's final determination not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). *See* 42 U.S.C. § 1383(c)(3). Pursuant to 42 U.S.C. § 405(g), the court has the power to "enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." *Id.* The Commissioner's factual findings shall be conclusive "if supported by substantial evidence." *Id.* "The court 'must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.'" *Bernard v. Colvin*, 774 F.3d 482, 486 (8th Cir. 2014) (quoting *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006)). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Fentress v. Berryhill*, 854 F.3d 1016, 1019-20 (8th Cir. 2017) (quoting *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007)).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the [administrative law judge ("ALJ")], but [it] do[es] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers "both evidence that detracts from the Commissioner's decision, as well as evidence that supports it." *Fentress*, 854 F.3d at 1020; *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (providing that review of the Commissioner's decision

2

"extends beyond examining the record to find substantial evidence in support of the [Commissioner's] decision" and noting that the court must also "consider evidence in the record that fairly detracts from that decision"). The Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is "something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal."

*Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991)). The court "will not disturb the denial of benefits so long as the ALJ's decision falls within the available zone of choice." *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011) (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "An ALJ's decision is not outside the zone of choice simply because [the court] might have reached a different conclusion had [the court] been the initial finder of fact." *Id*. (quoting *Bradley*, 528 F.3d at 1115). Therefore, "even if inconsistent conclusions may be drawn from the evidence, the [Commissioner's] decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *see also Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016) (providing that a court "may not reverse simply because [it] would have reached a different conclusion than the [Commissioner] or because substantial evidence supports a contrary conclusion").

### B. Review of Report and Recommendation

The standard of review to be applied by the court to a report and recommendation of a magistrate judge is established by statute:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3) (providing that, when a party

properly objects to a report and recommendation on a dispositive motion, a district court must review de novo the magistrate judge's recommendation). The Eighth Circuit has repeatedly held that it is reversible error for a district court to fail to conduct a de novo review of a magistrate judge's report and recommendation when such review is required. *See, e.g.*, *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003); *Hosna v. Groose*, 80 F.3d 298, 306 (8th Cir. 1996); *Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995); *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). The statute governing review provides only for de novo review of "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). When a party fails to object to any portion of a magistrate judge's report and recommendation, he or she waives the right to de novo review. *See Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994). The United States Supreme Court has stated that "[t]here is no indication that Congress, in enacting § 636(b)(1)[ ], intended to require a district judge to review a magistrate's report to which no objections are filed." *Thomas v. Arn*, 474 U.S. 140, 152 (1985). However, "while the statute does not require the judge to review an issue de novo if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under de novo or any other standard." *Id.* at 154.

### IV. OBJECTIONS

In the Objections, Freilinger argues that Judge Roberts erred: (1) in finding that the ALJ properly weighed Dr. Rahim's opinions; (2) in finding that the ALJ properly determined Freilinger's residual functional capacity ("RFC") assessment; and (3) in concluding that the ALJ's credibility determination is supported by substantial evidence. *See* Objections at 2-6. After conducting a de novo review of the objected-to portions of the Report and Recommendation and the Administrative Record ("AR") (docket nos. 9-1 through 9-8), the court will overrule the Objections.

#### A. Dr. Rahim's Opinions

Freilinger argues that the ALJ failed to properly weigh the opinions provided by her

4

treating physician, Dr. Abdur Rahim. *See* Objections at 2-4.

"The opinion of a treating physician is generally afforded 'controlling weight if that opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.'" *Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017) (quoting *Wildman*, 596 F.3d at 964). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001). The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *See Hamilton v. Astrue*, 518 F.3d 607, 610 (8th Cir. 2008). When an ALJ discounts a treating physician's opinion, he or she "must 'give good reasons' for doing so." *Chesser*, 858 F.3d at 1164 (quoting *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012)). "Good reasons for assigning lesser weight to the opinion of a treating source exist where 'the treating physician's opinions are themselves inconsistent,' *Cruze* [*v. Chater*], 85 F.3d [1320,] 1325 [(8th Cir. 1996)], or where 'other medical assessments are supported by better or more thorough medical evidence,' *Prosch* [*v. Apfel*], 201 F.3d [1010,] 1012 [(8th Cir. 2000)]." *Id*.

At the outset, the court notes that, generally, in the decision, the ALJ determined that:

> With regard to [Freilinger's] mental impairments, the objective and clinical evidence is inconsistent with the severity of her allegations. In this way, a review of [Freilinger's] treatment notes reveals that while she did experience brief upticks in symptom[at]ology mainly due to life stressors and the periodic ineffectiveness of medication, these upticks were not representative of her overall symptomatology throughout the period at issue (*see, e.g.*, Exhibits 8F/24-25; 11F/19-23, 51). Instead, the record reveals that her mental health has been predominantly stable with appropriate treatment during the relevant period.

AR at 15.

Specifically, the ALJ addressed Dr. Rahim's opinions as follows:

> In April 2019, [Freilinger's] treating provider, Abdur Rahim, MD, completed a medical source statement wherein he noted that [Freilinger] was unable to meet competitive standards in, among other areas, concentration, persistence, and pace; interaction with others; and adaptation (Exhibit 10F/3-6). Moreover, Dr. Rahim opined that [Freilinger] would miss work more than four days per month due to her impairments (Exhibit[] 10F/3-6).
>
> Although the opinions of [Freilinger's] treating provider are generally considered more reliable because of the duration of the treating relationship, this opinion of Dr. Rahim is inconsistent with the objective evidence including [Freilinger's] benign clinical findings and relatively normal activities of daily living. Ultimately, this checklist-style form appears to have been completed as an accommodation to [Freilinger] and includes only conclusions regarding functional limitations without any rationale for those conclusions. The undersigned finds this evidence has little probative value because it is not supported by the underlying objective evidence. Consequently, this opinion has been given little weight.

AR at 17.

Having reviewed the entire record, the court finds that the ALJ properly considered and weighed the opinion evidence provided by Dr. Rahim. The ALJ justifiably discounted Dr. Rahim's opinions because his opinions were "inconsistent or contrary to the medical evidence as a whole." *Aguiniga v. Colvin*, 833 F.3d 896, 901 (8th Cir. 2016) (quoting *Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011)). Even if inconsistent conclusions could be drawn on this issue, the court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *See Guilliams*, 393 F.3d at 801. Accordingly, the court will overrule this objection.

### B. Credibility Determination

Freilinger argues that the ALJ failed to properly weigh her subjective complaints of disability. *See generally* Objections at 5-6. Freilinger also suggests that Judge Roberts

misunderstood her citation to *Ford v. Astrue*, 518 F.3d 979 (8th Cir. 2008). *See id.* As for Judge Roberts discussion of the *Ford* case, the court disagrees with Freilinger's assertion that Judge Roberts misunderstood it. The court finds no error in Judge Roberts's conclusion that Freilinger's reliance on *Ford* is misplaced, as *Ford* addressed an ALJ's failure to weigh a claimant's testimony, activities of daily living and medical records, not the ALJ's failure to consider the claimant's prior work for which Freilinger cited it. *See* Report and Recommendation at 38-39.

Turning to Freilinger's subjection allegations of disability, when assessing a claimant's credibility, "the ALJ must consider all of the evidence, including objective medical evidence, the claimant's work history, and evidence relating to the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)." *Vance*, 860 F.3d at 1120. In *Polaski*, the Eighth Circuit stated that:

> [t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions.

739 F.2d at 1322. The ALJ, however, may not disregard "a claimant's subjective complaints solely because the objective medical evidence does not fully support them." *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010). If an ALJ discounts a claimant's subjective complaints, he or she is required to "make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the *Polaski* factors." *Renstrom*,

7

680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008) (stating that an ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found'" (quoting *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003))). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the court will not disturb the ALJ's credibility determination. *See Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination."). "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Igo*, 839 F.3d at 731 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

In this case, the ALJ determined that:

> After careful consideration of the evidence, the undersigned finds that [Freilinger's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. . . .
>
> With regard to [Freilinger's] mental impairments, the objective and clinical evidence is inconsistent with the severity of her allegations. In this way, a review of [Freilinger's] treatment notes reveals that while she did experience brief upticks in symptom[at]ology mainly due to life stressors and the periodic ineffectiveness of medication, these upticks were not representative of her overall symptomatology throughout the period at issue (*see*, *e.g.*, Exhibits 8F/24-25; 11F/19-23, 51). Instead, the record reveals that her mental health has been predominantly stable with appropriate treatment during the relevant period.

8

As evidence of the foregoing, the findings from [Freilinger's] mental status examinations have remained routinely benign. To this end, while [Freilinger] occasionally demonstrated a sad mood, contemporaneous treatment records repeatedly note that she also exhibited full cognition, a well-groomed appearance, normal speech, cooperative behavior, okay mood, normal affect, unimpaired memory, and intact attention and concentration (*see*, *e.g.*, Exhibits 3F/16, 19; 5F/4; 7F/5, 17-18; 8F/17-18, 22-23; 9F/5, 7; 11F/7-8, 13, 18, 24, 29, 36, 41, 46-47, 52). Additionally, the records indicate that [Freilinger's] mental health is responsive to medication. Thus, in March 2017, [Freilinger] reported that her mood was better and that she was not "feeling as sad, gloomy, blah, hopeless, helpless, or suicidal" (Exhibit 8F/17). Likewise, in June 2017, [Freilinger] reported no recent panic attacks and denied having mood swings (Exhibit 8F/22). Moreover, there is no evidence that [Freilinger] has ever required aggressive mental health treatment, hospital confinement, or emergency intervention due to any psychological symptomatology during the relevant period. Instead, the treatment that [Freilinger] has received during the relevant period has essentially been entirely routine and conservative in nature, consisting of medication management.

In addition, to the clinical and objective evidence described above, [Freilinger's] activities of daily living and other reported activities also belie the severity of her allegations. Despite her impairments, the record suggests that [she] has engaged in somewhat normal level of daily activity and interaction. For example, [she] independently bathes, dresses, maintains her personal hygiene, takes medication, prepares meals, does laundry, vacuums, washes dishes, and does yard work (Exhibits 3E/2-3; 5F/3; Testimony). In addition, she shops in stores, manages finances, watches television, cares for pets, reads, and goes camping in the summer (Exhibits 3E/2-5; 5F/3; Testimony). Furthermore, the record reflects that she leaves the house unaccompanied, goes on dates, spends time with friends, volunteers, and helped her mother (Exhibits 9F/7; 11F/35, 46; Testimony). Indeed, some of the physical and mental abilities and social interactions required in order to perform these

9

> activities are the same as those necessary for obtaining and maintaining employment. . . . [Freilinger's] ability to participate in such activities . . . undermines the supportability of [her] allegations of disabling functional limitations.
>
> Other factors also erode the persuasiveness of the instant claim. For example, a review of [Freilinger's] work history shows that [she] worked very little prior to the alleged disability onset date with no reported earnings of any kind since 2002 (Exhibit 10D). In fact, [Freilinger] has only earned a little over $12,000 in total lifetime earnings, which raises a question as to whether her continuing unemployment is actually due to medical impairments. Based upon the foregoing, the clinical and objective evidence is inconsistent with the severity of [Freilinger's] mental health allegations and instead supports the limitations set forth in the residual functional capacity above.

AR at 15-16.

It is clear from the ALJ's decision that he thoroughly considered and discussed Freilinger's treatment history, medical history, functional restrictions, activities of daily living, work history and use of medications in making his credibility determination. Thus, having reviewed the entire record, the court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Freilinger's subjective allegations of disability were not credible. *See Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005) (noting that an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints). Therefore, because the ALJ seriously considered, but for good reasons explicitly discredited, Freilinger's subjective complaints, the court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *See Guilliams*, 393 F.3d at 801. Accordingly, the court will overrule this objection.

*C. RFC Assessment*

Freilinger argues that the ALJ failed to properly determine her RFC assessment. *See* Objections at 4-5.

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the RFC to perform a significant number of other jobs in the national economy that are consistent with the claimant's impairments and vocational factors such as age, education and work experience. *See Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998). The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *See Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017). Relevant evidence for determining a claimant's RFC includes "medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." *Id.* (alteration in original) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Id.* (quoting *Steed v. Astrue*, 524 F.3d 872, 875 (8th Cir. 2008)).

Additionally, an ALJ "has a duty to fully and fairly develop the evidentiary record." *Byes v. Astrue*, 687 F.3d 913, 915-16 (8th Cir. 2012); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008).

The ALJ thoroughly addressed and considered Freilinger's medical and treatment history. *See* AR at 15-18 (providing a thorough discussion of Freilinger's overall medical history and treatment). The ALJ also properly considered and thoroughly addressed Freilinger's subjective allegations of disability in making his overall disability determination,

11

including determining Freilinger's RFC. *See id*. at 15-16 (providing a thorough review of Freilinger's subjective allegations of disability). Therefore, having reviewed the entire record, the court finds that the ALJ properly considered Freilinger's medical records, observations of treating physicians and Freilinger's own description of her limitations in making the RFC assessment for Freilinger. *See id*. at 15-18 (providing a thorough discussion of the relevant evidence for making a proper RFC determination); *see also Combs*, 878 F.3d at 646 (explaining what constitutes relevant evidence for assessing a claimant's RFC). Furthermore, the court finds that the ALJ's decision is based on a fully and fairly developed record. *See Byes*, 687 F.3d at 915-16. Because the ALJ considered the medical evidence as a whole, the court concludes that the ALJ made a proper RFC determination supported by some medical evidence. *See Combs*, 878 F.3d at 646; *Guilliams*, 393 F.3d at 803. Accordingly, the court will overrule the objection.

## V. CONCLUSION

In light of the foregoing, it is hereby **ORDERED**:

(1) The Objections (docket no. 19) are **OVERRULED**;

(2) The Report and Recommendation (docket no. 18) is **ADOPTED** and the final decision of the Commissioner is **AFFIRMED**; and

(3) The Complaint (docket no. 4) is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

**DATED** this 10th day of March, 2021.

LINDA R. READE, JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA